## PATIENCE RICHARDS *versus* JAMES HUMPHREYS, Executor.

A testator bequeathed the sum of $500 to his sister, who was a married woman. Subsequently, on her application, he advanced to her the sum of $466, to enable her to purchase some land, and she gave a receipt therefor, which stated that the money was received of the testator " in part of her right of dower in his last will." The testator also told her, that he was desirous of paying off the legacy in his lifetime, and offered to pay her the residue thereof, but she declined receiving it on that occasion. The husband of the legatee died before the testator. Upon the death of the testator, the legatee brought an action to recover the whole of the legacy. It was *held,* that the receipt and the declarations of the testator were admissible in evidence, to show, that the payment was intended by the testator as an ademption, *pro tanto,* of the legacy; and that under such circumstances, the legacy was adeemed *pro tanto,* by the payment, notwithstanding the legatee was, at the time, a married woman.

BY an agreed statement of facts it appeared, that John Hawes, the defendant's testator, on October 23, 1813, made his last will, by which he bequeathed to the plaintiff, who was his sister, the sum of $500, she being then the wife of *Jeremiah* Richards ; that the plaintiff having been informed of this legacy, by the testator, applied to him to advance her

money, in order to enable her to make a purchase of some land ; that in consequence of her application, the testator, on December 7, 1826, advanced the sum of $466, and she gave a receipt therefor, which stated that the money was received of the testator " in part of her right of dower in his last will and testament ;" that this payment took place without the interference or participation of the plaintiff's husband ; and that the testator stated to the plaintiff, that he was desirous of paying off, in his lifetime, this legacy and several others given by him to his brothers and sisters and their children, and offered to pay her the residue of the legacy given to her, but that she declined receiving it, on that occasion.

It further appeared, that the plaintiff's husband died on February 4, 1828 ; that the testator died on January 22, 1829 ; that the will was duly proved and allowed on June 14, 1830 ; that on March 2, 1832, the plaintiff demanded of the defendant the payment of the legacy ; and that the defendant offered to pay the residue of the legacy after the sum of $466 should be deducted, and upon the entry of this action in the Court of Common Pleas, brought into court the sum of $35·87.

If the Court should be of opinion, that the plaintiff was entitled to recover the whole of the legacy, then the defendant was to be defaulted, and judgment to be rendered against the estate of the testator for such sum as the Court should determine to be proper ; otherwise, the plaintiff was to become nonsuit.

The case was argued in writing.

*Metcalf* and *Lovering*, for the plaintiff. The main question in the present case is, whether this legacy was adeemed *pro tanto*, by the advancement. It seems to be a settled doctrine in England, that where a *parent* gives a legacy to a child, he is presumed to have intended it as a *portion* ; and that if he subsequently advance a *portion* on the child's marriage or other occasion, it will, *primâ facie*, be deemed an ademption of the legacy. But in the case of strangers (and all persons are, in this point of view, regarded as such, except *children*) this rule of law is reversed. *Ex parte Dubost*, 18 Ves. 140 ; 1 Roper on Legacies (3d ed.) 257, 266 ; *Powel* v. *Cleaver*,

2 Bro. C. C. 499; *Wetherby* v. *Dixon*, Cooper's C. C. 279; *Shudal* v. *Jekyll*, 2 Atk. 516; *Roome* v *Roome*, 3 Atk. 181.

It will doubtless be urged by the defendant, that the declarations of the testator, and the receipt given by the plaintiff, take this case out of the rule established by these decisions. We contend, that the declarations of the testator are not admissble in evidence for the purpose of defeating this action *pro tanto*. 1 Roper on Legacies, 272 to 283. As to the receipt, we have two grounds : 1. that its terms are senseless and inapplicable to the legacy sued for, by any necessary construction, and that, as the ambiguity is *patent*, it is not to be helped by the declarations of the testator. 3 Stark. on Evid. 1000 ; Buller's N. P. 297, 298 ; but 2. that, as the plaintiff was a *feme covert*, and the legacy was not given to her separate use, her receipt, however expounded, can have no effect, and is merely void. If the testator had been dead, at that time, she could not have legally received or released the legacy. *Palmer* v. *Trevor*, 1 Vern. 261.

*Aylwin*, for the defendant, cited *Bellasis* v. *Uthwatt*, 1 Atk. 426, note ; *Irod* v. *Hurst*, 2 Freem. 224 ; *Cuthbert* v. *Peacock*, 2 Vern. 593 ; *Scotton* v. *Scotton*, 1 Strange, 235 ; *Shudal* v. *Jekyll*, 2 Atk. 516 ; *Powel* v. *Cleaver*, 2 Bro. C. C. 516 ; *Rosewell* v. *Bennett*, 3 Atk. 77, note ; *Clarke* v. *Percival*, 2 Barn. & Adol. 660.

SHAW C. J. drew up the opinion of the Court. The only question left for the decision of the Court in the present case is, whether the payment made by John Hawes, the testator, in his life, to his sister Mrs. Richards, the present plaintiff, under the circumstances in proof, amounted to an ademption, *pro tanto*, of the legacy now sued for.

The ademption of a specific and of a general legacy depends upon very different principles. A specific legacy of a chattel, or a particular debt, or parcel of stock, is held to be adeemed, when the testator has collected the debt, or disposed of the chattel or stock, in his lifetime, whatever may have been the intent or motive of the testator in so doing. But when a general legacy is given, of a sum of money out of the testator's general assets, without regard to any particular fund, inten-

Richards
*v.*
Humphreys.

Richards
v.
Humphreys.

tion is of the very essence of ademption. The testator, during his life, has the absolute power of disposition. or revocation. If he pay a legacy in express terms during his lifetime, although the term payment, satisfaction, release or discharge be used, it is manifest that it will operate by way of ademption, and can operate in no other way, inasmuch, as a legacy, during the life of the testator, creates no obligation upon the testator or interest in the legatee, which can be the subject of payment, release or satisfaction. If therefore a testator, after having made his will, containing a general bequest to a child or stranger, makes an advance, or does other acts, which can be shown by express proof, or reasonable presumption, to have been intended by the testator as a satisfaction, discharge or substitute for the legacy given, it shall be deemed in law to be an ademption of the legacy. Hence it is, that when a father has given a child a legacy as a portion or provision for such child, and afterwards, upon the event of the marriage, or other similar occasion, makes an advance to such child, as and for a portion or provision, though to a smaller amount than the legacy, it shall be deemed a substitute for the provision contemplated by the will, and thence as an ademption of the whole legacy. This is founded on the consideration, that the duty of a father to make a provision for his child, is one of imperfect obligation and voluntary, that his power of disposing is entire and uncontrolled, that he is the best and the sole judge of his ability in this respect, and of the amount which it is proper for him to appropriate to any one child, as such provision. The law presumes, in the absence of other proof, that it was the intention of the father by the legacy to make such provision, that it was not his intention to make a double provision, that when after the will is executed, another provision is made for the same child, the original intent of making such provision by will is accomplished and completed, that the purpose of giving the legacy is satisfied, and of course concludes, that the legacy itself is adeemed. And if the subsequent portion or provision made in the lifetime of the testator, is less than the legacy, still it operates as an ademption of the whole legacy, not because a smaller sum can be a payment of a larger, but

because it manifests the will and intent of the testator, who is
the sole disposer of his own bounty, to reduce the amount of
the provision, originally contemplated, when he made his will.
*Hartop* v. *Whitmore,* 1 P. Wms. 681 ; *Clarke* v. *Burgoyne,*
1 Dick. 353. From this view of the subject of the ademp
tion of general legacies, it seems manifest, that the ademption
takes effect, not from the act of the legatee, in releasing or
receiving satisfaction of the legacy, but solely from the will
and act of the testator, in making such payment or satisfaction,
or substituting a different act of bounty which is shown by
competent proof to be intended as such payment, satisfaction,
or substitute.

The question therefore is, whether from the facts shown in
the present case, it sufficiently appears, that the advance of
money made by the testator in his lifetime to his sister, was
intended as a part payment and satisfaction of the legacy
given to her by his will ; if it was so intended, the law deems
it an ademption *pro tanto.*

Most of the cases cited on the part of the plaintiff, to
show what the law does, and what it does not, regard as an
ademption, are cases where the testator, in making an advance
during his lifetime, does not express the object or purpose
of such advance, and its intended effect upon a legacy given,
and are designed to show, from what combinations of facts
and circumstances, the law will or will not raise a presump-
tion, that it was the intention of the testator, that the advance
should or should not operate, in whole or in part, as a satis-
faction or substitute for the legacy. But they all proceed
upon the assumption, that where such intention is proved,
either by legal and competent proof, or by legal presumption,
the consequence of ademption will follow. Such were the
cases of *Ex parte Dubost,* 18 Ves. 140, and *Powel* v. *Cleaver,*
2 Bro. C. C. 499 ; the former, that of an illegitimate child,
described as the daughter of another person, and the latter,
of a niece. There was nothing in either case, satisfactorily
to show that the testator intended to place himself *in loco
parentis,* and therefore nothing, according to the somewhat
artificial reasoning before stated, to raise the presumption,
that he intended the legacy as a provision for a child. **The**

12 *

ground therefore was taken away, upon which the law would conclude that the advance on marriage was intended as a provision, and therefore there being neither evidence nor presumption, that the advance was a substitute for the legacy, it could not operate as an ademption.

In the present case we are of opinion, that conforming strictly to the rules of law, in regard to the admissibility of evidence, it is quite apparent from the facts proved, that the payment was intended by the testator, as an advance on account of this legacy, and an ademption *pro tanto*.

If it stood upon the receipt alone, we are strongly inclined to the opinion, that by a necessary construction it must apply to this legacy. It acknowledges the receipt of the money, of Hawes, in part of the plaintiff's right of dower under his last will, he being her brother. Had the words, " of dower," been omitted, the receipt would have been sufficiently clear, to wit, her right under his last will and testament. When the words come to be applied to the subject matter, it is apparent that they are perfectly senseless. If by retaining these qualifying words, the clause could be made to apply to any other right or subject matter, or if the effect of them in their actual application, would be such that they could not apply to and describe this legacy, the Court would certainly not be warranted in rejecting them. It is a general rule, in the construction of written instruments, that where words are used, by way of description, of persons or things, and the words apply in all material particulars to one subject, and there is no other, to which they can apply, they shall be considered, as applying to that which they do describe, sufficiently to in dicate its identity, although they fail in some particular. Such misdescription is regarded as a latent ambiguity, which arises, when the words come to be applied to the subject matter, and therefore may be corrected by showing *aliunde* that there is no such subject to which they can be applied, but that there is another, which the words do sufficiently describe to show that it was the subject intended. So where a legacy describes one species of stock ; but it appears that when the testator made his will he had not that particular species of stock, but another so like it, that it could leave no doubt it was the one

intended, this latter shall pass by the legacy. *Selwood* v. *Mildmay*, 3 Ves. 310. Here, considering the receipt as a receipt of money in part of a right of dower under his will, it is wholly senseless and describes nothing, because on reference to the will no such right appears, and no commutation or satisfaction of any right of dower is shown, to which it can apply. But there is another interest, which being a testamentary gift to a woman, might by an ignorant female be miscalled a right of dower ; but what is more material, if the receipt does not apply to this legacy, it would be wholly without application. It is upon these grounds, that we are strongly inclined to the opinion, that if it stood upon the construction of the receipt alone, taken in connexion with the will, it must be considered a payment on account of this legacy, without reference to the declarations of the testator.

But the ground upon which the Court decide the cause is this. Whatever may be the difficulties, in applying the rule, which prohibits the admission of parol evidence to alter or control a written instrument, there is one modification, which will sanction its admission in the present case. Whenever an act is done, the declarations of the party doing it, made at the time, are received to show the character of the act, and the purpose and design with which it is done. It is readily conceded, that it would not be competent to give in evidence the declarations of the testator, showing that he intended by any clause in his will, something different from the dispositions expressed, or to limit or control the legal inferences and presumptions arising from those expressions. Nor would it be admissible to show such declarations alone, to prove a direct intent of the testator to revoke or adeem a legacy. It would be, in either case, to make or revoke a will by parol ; which is alike contrary to the general rule of law, and to the statute of frauds. But when an act is done, which if done with one intent, will operate as an ademption, and if with a different intent, otherwise, under the rule already stated, evidence of the declarations of the intent may be given, to qualify the act, and the act operates by way of ademption. Here the declarations made at the time of the advance and payment of the money, not being contradictory to the receipt

but in conformity with it, prove conclusively, that they were made in part satisfaction of this legacy. Besides, if it were necessary to resort to that principle, it is a well-established exception to the general rule, excluding parol evidence to explain and control a written instrument, that a receipt for money may be so explained and controlled.

But there is another fact, stated in the case, which it seems competent to show by parol evidence, and which leads to the same conclusion. It is stated, that the testator expressed his desire to the plaintiff, at the same time, to pay off the legacies to his brothers and sisters in his lifetime, and that he offered to pay her *the balance* of her legacy, which she declined receiving. What is the inference from an offer to pay the balance, except that part was already paid ? On the whole, we are satisfied, that the evidence, to the extent of showing the intent and purpose of the payment, was admissible, and being admitted, it proves conclusively, that it was a payment on account of this legacy.

As to the objection, that at the time of the payment, the plaintiff was a *feme covert*, we are of opinion, that it does not vary the result. It is very clear, that the plaintiff's husband, having died before the testator, had no interest in this legacy. The only ground therefore is, that the plaintiff was at the time of the payment under the disability of coverture. But we have seen that ademption depends solely on the will of the testator, and not at all upon the ability of the party receiving to give a valid discharge. Had the money been paid to trustees or others for her benefit, without any act or consent of hers, if given expressly in *lieu* or in satisfaction of such legacy to her, it would have operated as an ademption. Had he purchased a house or other property in her name, and for her benefit, with the like intent and purpose expressed, it would have had the same effect. The circumstance of her disability therefore, at the time of the payment, is not inconsistent with the testator's intent in making it, to advance and satisfy the legacy to her, nor does it affect the efficacy of such payment as an ademption. The balance of the legacy having been paid into court, nothing now remains due.

*Plaintiff nonsuit.*