Stewart, J.
This cause was ably briefed and argued in this court by counsel for all parties, and in the brief of Anne Elizabeth Bool there is a succinct summary of facts and issues which all agree is accurate. That summary is as follows:
“By item IV of his will, executed August 4, 1948, Samuel E. Bool gave to his daughter the residue of his estate [approximately $1,000,000] except ‘any stock or securities which I may own issued by the Mather Iron Company.’ By item V he bequeathed in trust such ‘stock or securities.’
“Mr. Bool had owned 5,004 shares of class A preferred stock of Mather Iron Company. These shares were redeemed on March 31, 1953, by appropriate corporate action all of which was duly taken [by deposit in the Cleveland Trust Company of $100 per share].
“Mr. Bool died on December 4, 1953. The certificates evidencing the redeemed shares were among his effects.
*267 “The question is whether the daughter or the trustee is entitled to the proceeds of the redemption of the shares.”
Even if the trustee is entitled to the proceeds of the shares, the income from that trust as well as some of the principal, if needed, is to be paid to the daughter during her lifetime, and, if, when she dies, she leaves children, either natural or adopted, or their lineal descendants, such persons inherit the entire trust estate. It is only in case the daughter dies without natural or adopted children or their lineal descendants that the charities become the beneficiaries of the trust.
There seems to be no question that if the bequest of “any stock or securities which I may own issued by the Mather Iron Company” was adeemed before testator’s death, then the proceeds of the stock must be distributed to Anne Elizabeth Bool as part of the residuary estate, whereas if the stock or securities were not adeemed, the trustee is entitled to the proceeds.
Ademption is derived from the Latin word, “ademptio,” which means “a taking away.”
There are two kinds of ademption, one, by satisfaction of a legacy, sometimes known as the ademption of a general bequest, and, two, by its extinction, which has reference to a specific bequest.
Ademption by satisfaction occurs in consequence of some act of the testator in his lifetime which, though not directly a revocation of the bequest, is considered in law as equivalent thereto or indicative of an intention to revoke.
The question of ademption of a general legacy depends entirely upon the intention of the testator as inferred from his acts under the rules established in law. Cowles, Exr., v. Cowles, 56 Conn., 240, 13 A., 414; Richards v. Humphreys, Exr. (Chief Justice Shaw), 32 Mass., 133.
Thus, where there has been a bequest for a particular purpose and money is advanced by the testator in his lifetime for the same purpose, the legacy is considered to be adeemed. Richards v. Humphreys, supra.
The ademption of a specific legacy is effected by the extinction of the thing or fund, as it is generally stated, without regard to the testator’s intention.
This has been quite generally the holding of the courts *268 since the case of Stanley v. Potter (1789), 2 Cox. Ch., 180, in which case it was said that a bequest of a debt is adeemed by the debt being paid to the testator in his lifetime whether the payment be compulsory or voluntary. And Lord Thurlow added, “and I do not think that the question in these cases turns on the intention of the testator.”
If a testator bequeaths a specific horse to a legatee and that horse dies while the testator is living, the legacy is adeemed and the legatee has no claim to either another horse or the money equalling the value of the horse that died.
In the present case we have no question that the bequest of the ‘ ‘ stock or securities which I may own issued by the Mather Iron Company” constitutes a specific bequest, and we must determine whether it was adeemed by the redemption of the 5,004 shares of the class A preferred stock under the company’s articles of incorporation by which it had the right to redeem.
It is the contention of Anne Elizabeth Bool that at the time of his death her father owned no stock in the Mather Iron Company but was merely the owner of the money which had been deposited in the Cleveland Trust Company for the redemption of his stock; that the stock certificates which her father owned were not the stock, the certificates evidencing stock ownership only and being evidence of the shareholder’s property interest in the corporation; that, since, under the articles of incorporation, the Mather Iron Company had the right to redeem and call in the stock certificates by depositing $100 per share and accrued dividends with a bank or trust company, and since it had redeemed the stock by the deposit, in accordance with such articles, the shareholder, after the redemption had been made, was no longer the owner of any stock but had only a right to receive the deposit of money made therefor; and that, since the Mather Iron Company had become thereby the owner of the stock, with the right to reissue it if it so desired, testator’s stock was extinguished during his lifetime and thereby the bequest of it as a specific legacy was adeemed.
This argument would be persuasive and would present an entirely different question from the one we have before us were the bequest only of stock in the Mather Iron Company. Since all necessary steps to redeem such stock and extinguish testa *269 tor’s ownership were taken, leaving to him in his lifetime only a right to the money deposit that had been made for the stock, it would seem that testator no longer owned the stock in the Mather Iron Company at the time of his death. If he had collected the deposit during his lifetime and made no other provision in his will, undoubtedly the proceeds of the stock would perforce become a part of his residuary estate, and Anne Elizabeth Bool would be the absolute owner of it. However, testator had not collected the proceeds in his lifetime. The stock certificates were found among his effects, and the deposit made by the Mather Iron Company to redeem the stock was still held by the Cleveland Trust Company.
It must be remembered that the bequest was “any stock or securities which I may own issued by the Mather Iron Company. ’ ’
Did the testator own securities at his death?
According to the provisions of the articles of incorporation which formed the agreement between testator, as the owner of class A preferred stock, and the corporation, testator had the following rights as a result of his stock ownership:
1. He or his successors should receive dividends at the rate of five per cent per annum, cumulative.
2. The corporation would set aside annually a specific portion of its earnings in a sinking fund for the purpose of retiring preferred stock.
3. Upon liquidation of the corporation testator would be a Xjreferred shareholder, as against shareholders of any other class, to the amount of $100 per share of his stock.
4. In the event the corporation redeemed his stock, it would set aside the redemption price of $100 per share of such stock to be refunded to him.
When the Mather Iron Company gave notice of the redemption of such stock and deposited the amount to be paid to the shareholder, it extinguished the first three rights of the shareholder, but until the shareholder had received his money the fourth right still existed, that is, the right to receive the $100 per share.
It is true that testator’s stock ownership had been extinquished, but he still had the right to receive $100 per share, with *270 accrued dividends, for Ms stock, wMch right he had not exercised, and his ownership and possession of the certificates of stock were an evidence of his right to his money.
Was that right a security?
We are of the opinion that in this case it must he so held.
In Walton v. Walton (N. Y.), 7 Johns. Ch., 256, the great Chancellor Kent, in his masterful discussion of the law of ademption, indicated the desire of the Gourts to construe a bequest as not adeemed, and said:
‘ ‘ The courts are so desirous of construing the bequest to be general, that if there be the least opening to imagine the testator meant to give a sum of money, and referred to a particular fund only, as that out of which he meant it to be paid, it shall be construed pecuniary, so that the legacy may not be defeated by the destruction of the security.”
However, Chancellor Kent did lay down the postulate that if the legacy was the security itself, and the security was destroyed voluntarily or otherwise, the legacy must be considered specific and adeemed.
We cite the case to indicate the disposition of courts to lean away from ademption and to support the principle of giving a liberal interpretation to the word, “security.”
In the case of Cincinnati, Hamilton & Dayton Ry. Co. v. Kleybolte, 80 Ohio St., 311, 88 N. E., 879, Judge Davis said, at page 318:
“* * * the prohibited act is still confined to ‘any of the capital stock or any of the bonds, notes or other securities of such company of ivhich he is or may be a director,’ using the word ‘securities,’ as we take it, as the synonym of ‘evidence of indebtedness.’ See Century Dictionary and Webster’s Dictionary.”
In Groby v. State, 109 Ohio St., 543, 546, 143 N. E., 126, Judge Matthias said:
“Lexicographers similarly define the term ‘security’ as:
“ ‘An evidence of debt or of property, as a bond, stock certificate or other instrument, etc.; a document giving the holder the right to demand and receive property not in Ms possession.’ ”
In our opinion, the certificates of stock in the present case, *271 although they no longer constitute evidence of stock ownership, are, nevertheless, an evidence of a right to demand and receive property not in the possession of the holder of the certificates.
It is contended by Anne Elizabeth Bool that even without the certificates the money deposited for redemption could be recovered by the executors of the testator’s estate, but, even conceding this to be true, such certificates are an evidence of the right to receive the money as provided in the articles of incorporation of the Mather Iron Company and as recited upon the reverse side of the certificates. They constitute evidence of indebtedness, without which grave difficulties would arise in an endeavor to collect the money deposited for the redemption.
We hold, therefore, that the stock certificates involved in the present case, the money for the redemption of which stock had not been collected by the testator in his lifetime, constitute a security which has not been extinguished and, therefore, become a specific bequest to the Central National Bank, as trustee, under the provisions of item V of the will.
It follows that the judgment of the Court of Appeals must be, and it hereby is, affirmed.

Judgment affirmed.

Weygandt, C. J., Matthias, Hart, Zimmerman, Bell and Taft, JJ., concur.